case number 19-3075. United States of America v. Brynee Gay Baylor at balance. Mr. Sukumar for the at balance. Mr. Detriman for the appellate. Good morning, counsel. Mr. Sukumar, when you're ready, please proceed. Thank you. Good morning, your honors. May it please the court, Sean Sukumar on behalf of Ms. Baylor. Your honor, I think we are presenting a single issue before the court today, and that is on the question of the government's misstatements and speculation during closing arguments in this case, and whether those misstatements substantially prejudice Ms. Baylor's defense, and whether the court can find that those misstatements did not affect the jury's verdict in this case. And if so, if the court cannot find that those misstatements did not substantially prejudice Ms. Baylor's defense, then the court must vacate Ms. Baylor's conviction in this case. And your honor, just to briefly state just the background here on Ms. Baylor's defense, which is that central to the defense argument in this case is Ms. Baylor being an unwitting victim of Frank Lorenzo, also known as Frank Pavlico, and central to that argument that Ms. Baylor did not know that Mr. Lorenzo was engaging in a fraudulent scheme to bilk investors out of money. That central to that argument is not only the information that Ms. Baylor had that resulted in her trusting Mr. Lorenzo, and other people that she had heard from that told her that Mr. Lorenzo was to be trusted, that it resulted in her, Ms. Baylor, encouraging and getting her mother to invest in the same transaction that other investors had invested in. Her mother's investment, unbeknownst to Ms. Baylor, was then also improperly used. And that was a central argument at every single stage of Ms. Baylor's defense, was that if other investors had known about the fraudulent conduct of Mr. Lorenzo, would they have had their own family members invest in this scheme? And this was a question- Can I ask you a question, Mr. Seacorn? Can I ask you a question? So this factual predicate that you're laying before us and where you started off was that the court would have to find that the statements by the prosecutor did not affect the result, as opposed to putting the burden the other way to show that you'd need to show that it did affect. And on that, I'm trying to understand your claim of error, because in your reply brief, you say that the government's incorrectly saying that Ms. Baylor is appealing the denial of the new trial motion. And so you're not apparently appealing the denial of the new trial motion. But if you're not appealing the denial of the new trial motion, what's the asserted error that you're bringing to us? Yes, Your Honor, it is correct. We are not appealing the denial of the new trial motion. We are asserting that the error here is the government's incorrect statements, presenting speculative arguments as fact in the closing arguments at the very end of the case. Right. But with respect to that, so the prosecutor made some statements and then an objection was raised. And then the objection was sustained and the court took action. So I'm not quite following how you can say that there was an error as to which the government has the burden to prove harmless error if you actually made an objection and the objection was sustained because you won. And then after that, I mean, in theory, you could say, well, the trial court should have done something more. District court should have done something more than what was done. But you got a remedy. You raised an objection. You got a remedy. If the district court should have done something more, I didn't see anywhere where counsel at trial had objected that nothing more was done. And if that's true, then it's not clear to me what the error is that you would claim such that the burden would be on the government to prove harmless error. Typically, in this kind of situation, the way it arises, like in some of the cases you raised, is that prosecutor will make a statement, the defense will raise an objection and the objection will be denied. And then if the objection is denied, then you could bring the claim on appeal and say that was an error. And if the court agrees on appeal, that is an error, then the government has to burden to show that it's harmless error. But here the yes. And that's correct, that the that the three objections that were leveled against the government statements, they they were sustained. But our argument here is that that alone was not was not sufficient to be able to cure the prejudice to Miss Baylor. And then I think the reason why here and why it relates to these specific statements was really quick. And if if your claim is that that wasn't enough to cure it, but you didn't say that at trial, then I'm not understanding why the government has the burden on harmless error, because that seems like a plain error issue, because the objection wasn't raised. Because you did raise an objection, it was sustained. And then if you think something more should have happened, like say you thought a mistrial should have been declared, but nobody asked for a mistrial. And so at that point, it seems like the burden is on you to overcome plain error. Because now you're talking about something as to which there wasn't an objection as opposed to something as to which there was. Miss Baylor disagrees that that the objections that were leveled against the misstatements did not preserve the issue to the point where that she now has to assert plain error. We disagree that plain error is the correct standard here as opposed to harmless error. The objections that were leveled by trial counsel sufficiently preserve the issue. And I think the reason why they preserve this issue is because they were all directly related to the same issue, the same kind of misstatements, where there was speculation on the same issue. And it was the same issue that was central to Miss Baylor's defense. And because all three of the objected to statements were of the same type, this was a general objection to the types of statements that the government was trying to make, where they speculated on possible alternative explanations to a stipulation, none of which had been admitted at trial, none of which were testified to or otherwise in evidence. The government, as I read the transcript, never misrepresented what the stipulation stood for. Your Honor, the misstatements here, the central part of the misstatements here- But in fact, I think defense counsel did misstate what the stipulation said. As I recall, the defendant's counsel said that the stipulation showed that Miss Baylor's mother invested in this, whatever it is, fund. But the stipulation doesn't say that, does it? Your Honor, the stipulation, and this, I think, goes to the instructions on how the jury is to and this is why the defense- No, no, no. You're missing my point. Maybe I haven't made it clear. The only thing the stipulation says is that the mother gave $15,900 to Miss Baylor for whatever the purpose was. And then later, Miss Baylor says that this other fellow told her he invested it. That doesn't prove that it's been invested at all. And it's double hearsay anyway. Your Honor, I think the- While it's true that those facts alone don't necessarily prove anything and the jury was left to decide who they credited and who they didn't credit, the point is that the explanations for what happened to that investment or what happened to that money were not raised at trial. Why isn't that just fair argument? The government didn't misrepresent the, so far as I can tell, the stipulation and then asked the jury to draw certain inferences in light of the context and the date and the fact that Miss Baylor knew by then that she was under investigation. On the other hand, the defense is asking the jury to draw inferences from the stipulation, namely the main one being that no daughter would have her mother invest in a scam operation knowing it to be a scam. So you're drawing one inference, the government wants another. I don't see where there's even error at all in this. And Your Honor, I think this goes to where at trial, the defense actually didn't object to certain inferences or certain arguments that were made about, for example, inconsistencies between how Miss Baylor approached an investment from her mother compared to other investors. The government raised multiple issues related to differences in the documentation that applied to some investors versus her mother. None of that was objected to because the defense felt that that was all fair lines of questioning and fair lines of argument. The only issues where the defense objected to was when the government stated, for example, a presumption that Miss Baylor's mother was trying to help her daughter, not presenting that as a possible argument, not asking anyone to testify to that or not eliciting that information at trial from any witnesses, but presenting that speculation as fact that Miss Baylor's mother wants to help her daughter, for example, or that this money was for a mortgage statement or was for household expenses. Presenting those arguments as fact, especially during closing arguments when there'd be no additional testimony to challenge it and no additional ability to be able to call any additional witnesses on those matters, that is where Miss Baylor was substantially prejudiced. And I think this is especially important on an issue where the- Let me ask if my colleagues have further questions for you, Judge Piller. I did want to ask back. I had some of the same confusion that the chief judge was asking about, of what it is, both the standard of review, which I don't, for the reasons that the chief judge mentioned, I'm not sure I see why you think it's the government's burden, but I'm also curious, what are you, what relief are you seeking in the brief at Roman at one, when you would describe the ruling under review, you say this is an appeal from the misstatements and that it warrants a new trial. But then elsewhere, you seem to be saying that the conviction should just be vacated. And I guess those aren't mutually exclusive, but again, the clearest way I understand this record is that it's an appeal from denial of a new trial and that the burden is on the defense to show that the district court did not abuse its discretion in denying a new trial. Your Honor, we see the first issue that the court should consider here as being whether Ms. Baylor is substantially prejudiced by the government's misstatements. Can I first ask what relief are you seeking? Are you seeking a new trial? Yes, we are seeking a new trial. We're seeking to vacate the conviction and grant Ms. Baylor a new trial. And the reason that it's not, that the standard for our review is not that the district court abused its discretion in denying the motion for new trial. Your reasoning for that not being the correct standard is what? Your Honor, the way that we see it is that the granting, the sustaining of the objections did not cure the misstatement, did not eliminate the misstatements. And the reason why- And defense didn't ask if the district court for any further curative instructions. No, those arguments were eventually made in the motion for new trial. And that's correct, that the arguments there were eventually made in the motion for new trial. But we do not believe that that is the starting point for the court's consideration. We believe that the starting point for the court's consideration should be on whether the misstatements by the government substantially prejudiced Ms. Baylor before even getting to the question of abuse of discretion. And that if the statements substantially prejudiced Ms. Baylor, regardless of whether the defense made any additional requests for any additional jury instructions, and regardless of the objections were sustained, the presence of the statements at that pivotal time in the case, at the question of rebuttal on a very specific issue related to a stipulation, as the last thing that the jury heard, whether that substantial prejudice was error to the point where it was not harmless and requires reversing the conviction. We believe that that is the I'll ask my colleagues have additional questions at this time. We'll hear from the government. We'll give you a little bit of time for rebuttal. Thank you, Mr. Detterman. Thank you. Good honor. And good morning. And may it please the court, Mark Detterman for the United States. I'd like to first address the stipulation. The stipulation in this case was a stipulation of testimony. It was a stipulation of what Ms. Gandy testified to in the SEC deposition. It was not a test. It was not a stipulation of fact. If you look at the stipulation itself, it uses the word testify five times. Every single sentence is Gandy testified that she spoke to Frank Lorenzo. Gandy testified that she gave Baylor a check for $15,000. Gandy testified that Baylor I told that Baylor told her that Lorenzo had received the money. And if you look at the during the first day of trial, defense counsel himself characterized the stipulation in this way. And this is April 19th afternoon, transcript 3536. He said, Andre Gandy, that's Ms. Baylor's mother and Ms. Baylor's mother is available to testify today. She unfortunately has Parkinson's disease. And so she's unable to testify here, but she testified in a prior hearing. And the parties have stipulated about what she would say. That's how defense counsel characterized the stipulation on the first day of trial. So again, this is not the government did not agree to a stipulation that Gandhi made an stipulated to what she summary of what she had testified during the SEC deposition. That was one issue addressed. The second issue is the standard of review that I like to quickly address. And that's defense counsel appears to be trying to get around the abuse of standard. You know, a standard of review of abuse of discretion or clearly erroneous on the factual issues by saying they're not appealing the district court's denial of their new trial motion. But if that's true, which makes no sense, the district court ruled on these matters, the district court found that the government had not misstated the evidence. The district court ruled that even if this was even if it was improper, the case was not close and the evidence was overwhelming and that it would not have changed the verdict. So the trial court made findings on those errors. But if we somehow ignore that and go back to the trials transcript, as Judge Sreenivasan said, that their only objection was speculation. They didn't ask for a new trial. And so here they're going way beyond speculation. Not only are they claiming that the government violated the stipulation, they're claiming that the government misstated the facts, which they didn't say at the time. And they're asking for a new trial or a mistrial. And none of that was raised during the trial. And that's the standard would be plain error. And again, the standard in any case is very high. In Borda, this court said that we would only reverse a trial, grant a new trial on a prosecutorial, you know, on a comment of a jury. And the jury was so infected the trial with unfairness as to overcome the jury's ability to rationally weigh the evidence. And in the statements made by the prosecutor, which were about bias, and which were about whether this was really an investment or not, and both of those were based on the evidence. The prosecutor's comments were not inflammatory. They were they did were meant to play on jury sympathies or emotion. They were simply arguments that one Baylor's mother might be biased in favor of her daughter. And and that was based on the evidence. Baylor herself testified that she had a very close relationship with her mother, that her mother had been living with her, and that she was taking care of her mother through her mother's illness. The second part was whether this was an investment or not. And again, this was based on the evidence. The investment wasn't just a $15,000 check. It was two checks. There was a $15,563.20 check written from Baylor's account to Frank Lorenzo. So an odd amount that was written to Frank Lorenzo from Baylor's personal account. Then two weeks later, there was a second check for $15,900. And Baylor admitted that she filled out that check on her mother's account and had her mother sign it. And that was deposited in Baylor's personal account. So the government's argument that this might not have been an investment that there might have been money transferring from the mom for housing household expenses or something like that it wasn't pure speculation. It was based on the evidence that was presented at trial. Thank you, Mr. Dedeman. If my colleagues have no questions for you, we'll give Mr. Sukumar's rebuttal time. If we were to assume that the standard from the closeness centrality and issue about whether this prosecutorial statement substantially prejudiced the jury, the government doesn't really argue that the disputed issue as to which the district court sustained the objection was an issue central to the case, does it? I mean, the question whether or not Baylor had the requisite mens rea and this issue about the purpose of the check was an investment or not, that's central to the case now. Your Honor, I understand your point. I mean, obviously, the mens rea of Baylor and whether she thought this was a real investment is something that was central to the case. However, the $15,000 investment is a very small part of that. It's $15,000 out of $2.4 million. Also, Baylor herself, she testified for two days. And the testimony about her mother's investment was only four pages of that transcript of two days. And she essentially denied that she made any of these promises. Over two days, she denied she made these promises to the investors about their money being safe, and then they would get a high return. And that was contradicted by nine victims that testified that they lost all their money. And so even if mens rea is central, but this $15,000 investment is such a small part of that, that I don't I think it's hard to say that's... Yeah, I'm sorry to interrupt. That's helpful. I mean, the district court says it's not a close issue, in part pointing to all the other evidence and some of the facts that you characterize. But I guess that really helps highlight my question about centrality. Do we look at whether the issue here, the mens rea, is central to the case, and that's the issue on which the disputed comments bear? Or do we look more narrowly at whether the role that the erroneous statement might have played could be central? Or is that really mixing closeness and centrality? I'm just trying to get, like, is centrality... How generally or particularly do we apply the centrality inquiry? I mean, I think the closeness should matter, like how much of the mens rea, how important this issue was to the mens rea proof. Even if the jury believed that there was a $15,000 investment by her mother, they still would have convicted her because they have all these statements that show that she was immediately taking this money out of the trust fund account. And she knew she was taking it out and spending it. So she knew she was fraud. I mean, the bank records show that. So even if there was some investment by her mother, I don't think that wouldn't have even made a difference in the outcome. It might have been just for show. In fact, to one investor, Baylor bragged that she personally was invested in these funds. Although the only evidence really is that her mother invested in these funds, according to I don't think it's central. I understand that the mens rea is certainly central. I'm not sure how you parse that. I think it's an interesting, arguable question. All right. Thank you. Unless my colleagues have additional questions for you. Thank you, Mr. Dediman. Mr. Sukumar, we'll give you two minutes for rebuttal. Thank you, your honors. And I'll be very brief in this situation. Your honors, where the government errors in their argument here is, I think, in a couple of places. One is whether the question of the specific amounts of the claimed investment by Ms. Baylor's mother in relation to the total amount of money has any relevance whatsoever to the question of Ms. Baylor had the requisite mens rea to know that the scheme was fraudulent. And the two we would propose are just completely unrelated to each other. The central argument here from Ms. Baylor is that she did not know that this scheme by Frank Pavliko slash Frank Lorenzo was fraudulent and that she would not have gotten her mother's money involved. And this is what she testified to. And this is something that the jury had the ability to obviously weigh credibility between Ms. Baylor, between the government's witnesses and between the claim from Ms. Baylor that her mother's money was invested in the same funds and the same transactions that their money was in, according to what she testified to as her belief and her honest, genuine belief at the time. And it's that belief that is the central part and the central issue of the defense, not the specific amounts of money, not whether the statements were central to the government's case. The government's case can be whatever it wants to be. The central issue for the court's consideration is whether this was central to Ms. Baylor's defense. And it was not only central to Ms. Baylor's defense, but the government's statement substantially prejudiced her ability to be able to make that defense in a way that could not have been cured by the objections. It could not have been cured by the government, by the final jury instructions. And that is why we're asking Ms. Baylor to be granted a new trial. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Pillard, Randolph